**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **STEVE PERRY** *et al.*, | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **Civil Action No. 4:21-cv-838-ALM-KPJ** |
| **v.** | § | |
| | § | |
| **PEOPLE OF THE STATE OF** | § | |
| **TEXAS** *et al.*, | § | |
| | § | |
| **Defendants.** | | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

The following motions (together, the "Motions") are pending before the Court:

1. Defendant Group Nine Media, Inc.'s ("GNM") Motion to Dismiss ("GNM's Motion") (Dkt. 32), wherein GNM moves the Court to dismiss the claims against it for lack of personal jurisdiction, insufficient service of process, and failure to state a legal claim upon which relief can be granted;

2. Defendants NBC Universal Media, LLC ("NBC"), Steve Burke ("Mr. Burke"), and Jeff Shell's ("Mr. Shell") Motion to Dismiss ("NBC's Motion") (Dkt. 36), wherein NBC and Messrs. Burke and Shell move the Court to dismiss the claims against them for failure to state a legal claim upon which relief can be granted;

3. Defendants SPCA of Texas and Arturo Munoz's ("Mr. Munoz") Motion to Dismiss (the "SPCA's Motion") (Dkt. 39), wherein the SPCA of Texas and Mr. Munoz move the Court to dismiss the claims against them for insufficient service of process and failure to state a legal claim upon which relief can be granted; and

4. Defendants Univision Communications Inc. ("Univision") and Wade Davis's ("Mr. Davis") Motion to Dismiss ("Univision's Motion") (Dkt. 52), wherein Univision and Mr. Davis move the Court to dismiss the claims against them for failure to state a legal claim upon which relief can be granted.

Plaintiffs Steve Perry ("Mr. Perry"), Jose Salas ("Mr. Salas"), Jorge Vasquez ("Mr. Vasquez"), and the Texas Gamefowl Breeders Association ("TGBA")[1] (together, "Plaintiffs"), proceeding *pro se*, filed a response in opposition to Univision's Motion only (Dkt. 53), to which Univision and Mr. Davis filed a reply (Dkt. 54). Upon consideration, the Court recommends GNM's Motion (Dkt. 32) be **DENIED WITHOUT PREJUDICE**. The Court recommends NBC's Motion (Dkt. 36), the SPCA's Motion (Dkt. 39), and Univision's Motion (Dkt. 52) be **GRANTED IN PART** and **DENIED IN PART WITHOUT PREJUDICE**.

## I.    BACKGROUND

### A.  Factual Background

This case arises from an alleged traffic stop of a van driven by Mr. Salas. *See* Dkt. 4 at 22. The van, which was allegedly owned by Mr. Vasquez, was transporting "63 very rare Heritage Old English Gamefoul" pursuant to an alleged contract between Messrs. Vazquez and Perry. *See id.* The chickens were allegedly owned by TGBA, *see id.* at 7, and the chickens' transport boxes were allegedly owned by Mr. Perry, *see id.* at 6. Plaintiffs allege Mr. Salas was transporting the chickens to be displayed at a TGBA meeting in Elmendorf, Texas, and a show in San Antonio, Texas. *See id.* Mr. Salas was allegedly stopped in Sulphur Springs, Texas, by Defendant Harry Washington, who Plaintiffs allege is a Hopkins County Sheriff Deputy. *See id.* at 8, 22. Plaintiffs allege Mr. Salas was arrested, the van was searched, and the chickens were seized by law enforcement. *See id.* at 22–25. While at the Hopkins County Jail, Mr. Munoz allegedly interrogated Mr. Salas on behalf of the SPCA of Texas and demanded that Mr. Salas "sign a paper releasing the 63 chickens to [Mr.] Munoz or else go to court and face 10 years in jail." *See id.* at 25. According to Plaintiffs,

---

[1] On August 3, 2022, the Court entered an Order (Dkt. 57), wherein the Court advised TGBA that it could not proceed *pro se* in this civil action. *See* Dkt. 57. The Court ordered TGBA to retain counsel within a specified time and warned that failure by TGBA to retain counsel will result in the dismissal of TGBA's claims. *See id.*

Mr. Salas "signed over the 63 chickens under GREAT duress, threat, intimidation and fear, even though he . . . was not the lawful owner of the chickens." *See id.* at 25. Thereafter, Mr. Munoz and the SPCA of Texas allegedly took custody of the chickens. *See id.* at 27. Plaintiffs allege Mr. Salas was subsequently charged with cockfighting. *See id.* at 27. Although Plaintiffs allege the charges against Mr. Salas were eventually dropped, *see id.*, Plaintiffs allege the chickens were never returned to them, *see id.* at 29.

Plaintiffs contend multiple defendants—including GNM, NBC, Univision, and Messrs. Shell, Burke, and Davis—"all published and/or broadcast erroneous and false information about [Mr. Salas's] traffic stop and incarceration, about the 63 Old English Gamefoul with nearly extinct bloodlines, never did fact checking, and have never corrected the record." *See id.* at 32. Plaintiffs allege GNM, by and through the Dodo, a news outlet allegedly owned by GNM, published a story that "defames [Mr.] Salas and contains a photos [sic] of the 63 stolen chickens." *See id.* at 17. Plaintiffs allege that NBC and Messrs. Shell and Burke, by and through Telemundo, a news outlet allegedly owned by NBC, published a story that "defames [Mr.] Salas and contains a huge photo of [Mr.] Salas in jail clothes." *See id.* at 15. Plaintiffs allege Univision and Mr. Davis also published a story that defames Mr. Salas and depicts him in jail clothes. *See id.* at 16.

### B. Procedural History

Plaintiffs, proceeding *pro se*, filed this lawsuit on June 18, 2021, in the Southern District of Texas. *See* Dkt. 1. Plaintiffs amended their complaint on September 15, 2021. In the seventy-seven-page amended complaint, Plaintiffs assert twenty-two causes of action sounding in tort, criminal, and constitutional law against each of the thirty-two defendants named in this action (collectively, "Defendants"). *See generally* Dkt. 4. Plaintiffs' claims against GNM, NBC, Univision, and Messrs. Burke, Shell, and Davis arise from allegedly defamatory statements made

by the following news outlets regarding the alleged traffic stop and subsequent seizure of the chickens: The Dodo, Telemundo, and Univision. *See id.* at 15–18. Plaintiffs' claims against the SPCA of Texas and Mr. Munoz arise from the SPCA of Texas's alleged questioning of Mr. Salas and the seizure of the sixty-three chickens. *See id.* at 10–11. Plaintiffs request millions of dollars in damages from each Defendant. *See* Dkt. 4 at 73–77.

This case was transferred to the Eastern District of Texas on November 3, 2021, *see* Dkts. 28–29, assigned to United States District Judge Amos L. Mazzant, III, and referred to the undersigned for all pretrial matters pursuant to 28 U.S.C. § 636, *see* Dkt. 30. To date, only some Defendants have appeared in this matter. The moving Defendants—GNM, NBC, the SPCA of Texas, Univision, and Messrs. Shell, Burke, Davis, and Munoz—filed the Motions seeking to dismiss Plaintiffs' amended complaint. *See* Dkt. 32 (GNM's Motion); Dkt. 36 (NBC's Motion); Dkt. 39 (the SPCA's Motion); Dkt. 52 (Univision's Motion). The Motions are ripe for adjudication.

Several other Defendants filed motions to dismiss prior to transfer but have not re-urged such motions to assert their arguments before the Court. *See* Local R. CV-7(j) ("Except in prisoner cases, any motions pending in another federal or state court made by any party will be considered moot at the time of transfer or removal unless they are re-urged in this court."). On October 7, 2021, Defendant People of the State of Texas (the "State") filed a motion to dismiss. *See* Dkt. 7. On October 21, 2021, the following Defendants jointly filed a motion to dismiss: Hopkins County; Hopkins County Sheriff's Department; Hopkins County, Texas; Dustanna Rabe; Amy Smith; Lewis Tatum; Harry Washington; and Corley Weatherford. *See* Dkt. 21. Plaintiffs did not file responses to either motion; however, on January 28, 2022, Plaintiffs filed a motion to

dismiss their claims against the State with prejudice. *See* Dkt. 55. Plaintiffs' claims against the State were dismissed by the Court with prejudice on August 8, 2022. *See* Dkt. 58.

The remaining Defendants—Chads Media, LLC, Chadwick Kopal, Logan Vaughan, Racy Properties, LLC, Chad Young, Rhonda Adair, Ben Lerer, Dave Ugelow, Adrian Pierce, Elizabeth Claire Alberts, Flowers & Davis, PLLC, Celia C Flowers, Robert S Davis, and Lee J Correa—have not entered appearances in this action.[2]

## II.    SUBJECT-MATTER JURISDICTION

"*[S]ua sponte* dismissal is mandatory when a court discovers that it lacks subject-matter jurisdiction." *Carver v. Atwood*, 18 F.4th 494, 497 (5th Cir. 2021); *see* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). In this case, although not raised by the parties, the Court finds it does not have jurisdiction to consider certain claims brought pursuant to Title 18 of the United States Code, 28 U.S.C. § 1746, and 31 U.S.C. § 3729.[3] The Court, therefore, recommends such claims be dismissed.

### A.  Subject-Matter Jurisdiction Standard

Federal Rule of Civil Procedure 12(b)(1) permits dismissal if a complaint fails to establish the Court's subject-matter jurisdiction over the claims asserted therein. *See* FED. R. CIV. P. 12(b)(1). This is because federal district courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate the claims brought before them. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). The party asserting that subject-matter jurisdiction exists has the burden of proving its requirements are met. *See Willoughby v. United*

---

[2] The Court notes Plaintiffs have not filed a return of service as to any Defendant in this action.

[3] The moving Defendants each moved to dismiss such claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

*States ex rel. United States Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013) (per curiam); *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). "Lack of subject-matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). A claim should be dismissed for lack of subject-matter jurisdiction "if it appears certain that the plaintiff cannot prove any set of facts in support of [the] claim that would entitle plaintiff to relief." *Id.* (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

### B.  Title 18 of the United States Code

Title 18 of the United States Code, titled "Crimes and Criminal Procedure," is the federal criminal code. Plaintiffs allege all Defendants in this action violated the following criminal statutes: 18 U.S.C. §§ 43 (force, violence, and threats involving animal enterprises), 241–42 (criminal conspiracy and deprivation of rights), 666 (theft or bribery concerning programs receiving federal funds), 667 (theft of livestock), 891 (definitions for chapter relating to extortionate credit transactions), 1001 (fraud and false statements), 1201 (kidnapping), 1341 (mail fraud), 1343 (wire fraud), 1346 (definition of "scheme or artifice to defraud"), 1621–23 (perjury), 1951–60 (racketeering), 1961–64 (racketeer influenced and corrupt organizations, hereinafter "RICO"), 2151 (definitions related to sabotage), 2153 (destruction of war material, war premises, or war utilities), 2155 (destruction of national-defense materials, national-defense premises, or national-defense utilities), and 2311 (definitions of stolen property). *See generally* Dkt. 4.

However, "The law is settled that there is no private right of action for violation of criminal statutes." *Calhoun v. Atty. Gen. of Tex.*, No. 4:20-cv-16, 2020 WL 6120475, at *4 (N.D. Tex. Sept. 30, 2020), *R. & R. adopted*, 2020 WL 6082901 (N.D. Tex. Oct. 15, 2020). Unless otherwise stated, the provisions of Title 18 do not confer private rights of action and, therefore, do not provide jurisdiction for a civil case. *See id.*; *Menefee v. Nike Inc.*, No. 4:14-3715, 2015 WL 540455, at *3 (S.D. Tex. Feb 10, 2015) (collecting cases) ("The United States Supreme Court and Fifth Circuit have clearly held that private citizens like Plaintiff ha[ve] no authority to initiate criminal prosecutions and cannot enforce criminal statutes through civil actions."); *cf. Acara v. Banks*, 470 F.3d 569, 572 (5th Cir. 2006) (per curiam) (holding "there is no private cause of action under HIPAA and therefore no federal subject matter jurisdiction" over the plaintiff's HIPAA claims). With the exception of Plaintiffs' RICO claims, which do allow for civil actions by private individuals, *see* 18 U.S.C. § 1964, Plaintiffs' claims under Title 18 do not confer private rights of action. As such, with the exception of Plaintiffs' RICO claims, the Court finds it does not have subject-matter jurisdiction to consider Plaintiffs' claims asserted under Title 18. Such claims, therefore, should be dismissed.

## C. Title 28 United States Code Section 1746

Likewise, the Court lacks subject-matter jurisdiction over Plaintiffs' claims asserted under 28 U.S.C. § 1746. Plaintiffs allege all Defendants in this action violated Section 1746 by failing to file verified answers to Plaintiffs' complaint. *See* Dkt. 4 at 71. However, Section 1746 does not provide a private right of action upon which a plaintiff can recover; it merely provides the procedure by which a party can submit an unsworn declaration as evidence in federal court. *See* 28 U.S.C. § 1746. Because Section 1746 does not confer a private right of action, the Court finds

it does not have subject-matter jurisdiction to consider Plaintiffs' claims asserted under Section 1746. Such claims, therefore, should be dismissed.

### D.  Title 31 United States Code Section 3729

The Court also finds it lacks subject-matter jurisdiction over Plaintiffs' claims asserted under the False Claims Act, 31 U.S.C. § 3729 *et seq.* The False Claims Act is a federal anti-fraud statute that prohibits the knowing submission of false or fraudulent claims to the federal government. *See Henderson v. Wells Fargo Bank, N.A.*, 974 F. Supp. 2d 993, 1016 (N.D. Tex. 2013). A private person can bring a civil "*qui tam*" action on behalf of the United States for violations of the False Claims Act. 31 U.S.C. § 3730. But in so doing, the private person may not proceed *pro se. Doe v. Yackulic*, No. 4:18-cv-84, 2019 WL 1301998, at *5 (E.D. Tex. Feb. 19, 2019) (collecting cases), *R. & R. adopted*, 2019 WL 1299364 (E.D. Tex. Mar. 21, 2019). Accordingly, Plaintiffs cannot pursue claims under the False Claims Act without legal representation. *See id.* The Court, therefore, finds it does not have subject-matter jurisdiction to consider Plaintiffs' claims asserted under the False Claims Act. Such claims, therefore, should be dismissed.[4]

---

[4] The Court also notes Plaintiffs failed to comply with the procedural requirements a private party must follow to pursue a *qui tam* action on behalf of the federal government. Section 3730 requires:

> (1) the action must be brought in the name of the United States; (2) the complaint must be filed in camera and under seal; (3) the plaintiff must serve a copy of the complaint and a written disclosure of all material evidence on the United States; and (4) the complaint shall not be served on the defendant until the court so orders.

*Henderson*, 974 F. Supp. 2d at 1016; *see* 31 U.S.C. § 3730(b). Plaintiffs' complete failure to follow the procedures outlined in Section 3730(b) provides another basis for dismissal, *see Henderson*, 974 F. Supp. 2d at 1016, albeit not jurisdictional. *See United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457, 470 (5th Cir. 2015) ("The requirements of § 3730(b)(2) are procedural, not jurisdictional.").

### III.    PERSONAL JURISDICTION

GNM seeks to dismiss Plaintiffs' claims based on lack of personal jurisdiction. *See* Dkt. 32. Plaintiffs did not file a response. The Court finds Plaintiffs have not established the Court's personal jurisdiction over GNM.

### A.  Additional Relevant Background

Plaintiffs' claims against GNM arise from an online article (the "Article") published by The Dodo, an online newspaper owned by GNM. *See id.* at 17, 41, 43, 46–49, 53, 55, 56, 59–64, 66, 67. According to Plaintiffs, the Article "defames Jose Salas and contains a photos [sic] of the 63 stolen chickens." *See id.* at 17. Plaintiffs allege GNM "aided and abetted Defendants in conspiracy [sic] to defraud the public by publishing [the Article] – which remains on the internet today." *See id.*

The Article is attached, in part, to Plaintiffs' Amended Complaint, *see* Dkt. 4-2 at 21, and is attached, in full, as Exhibit 2 to GNM's Motion, *see* Dkt. 32-2; *see also* Dkt. 33 (authenticating the Article). The Article does not identify Mr. Salas or any other Plaintiff, but it does mention the police seizure of sixty-three chickens and the belief that such chickens were involved in cockfighting. *See* Dkt. 4-2 at 21; Dkt. 32-2. The Article does not affirmatively state the van was stopped in Texas or that the chickens were being transported to be shown and/or allegedly used for cockfighting in Texas. *See generally* Dkt. 32-2. The Article does mention, based on information provided by a representative of the SPCA of Texas, that the chickens were, upon seizure, transported by the SPCA of Texas to be housed in an undisclosed facility in Texas. *See id.* at 9. The majority of the Article discusses cockfighting, in general, based on information gathered from a representative of the Humane Society of the United States. *See generally* Dkt. 32-2. Finally,

though the Article contains pictures of chickens that have an SPCA of Texas watermark, the Article does not contain pictures of Mr. Salas or any other plaintiff. *See generally id.*

According to Plaintiffs, GNM "do[es] business from New York, NY" and can be served through "Registered Agent, United Corporate Services, Inc., 874 Walker Road, Suite C, Dover, DE 19904." *See id.* at 17–18.

### B.  Personal Jurisdiction Standard

Personal jurisdiction "represents a restriction on judicial power . . . as a matter of individual liberty." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (quoting *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)). Federal Rule of Civil Procedure 12(b)(2) permits a district court to dismiss a defendant, upon motion, if the court does not have personal jurisdiction over the defendant. *See* Fed. R. Civ. P. 12(b)(2). The plaintiff has the burden to establish personal jurisdiction exists, but the plaintiff need only establish a *prima facie* case of personal jurisdiction if the court rules on jurisdiction without an evidentiary hearing. *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (citing *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002)). In determining whether the plaintiff has met his burden, the district court "may consider the contents of the record at the time of the motion . . . ." *Id.* (quoting *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006)). "Although jurisdictional allegations must be accepted as true, such acceptance does not automatically mean that a prima facie case for [personal] jurisdiction has been presented." *Id.* (alteration in original).

Personal jurisdiction exists "if the state's long-arm statute extends to the defendant and exercise of such jurisdiction is consistent with due process." *Id.* (citing *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)). In Texas, jurisdiction exists to the extent allowed

by the U.S. Constitution; thus, the "two-step inquiry collapses into one federal due process analysis." *Id.* For personal jurisdiction to exist, due process requires the defendant have "minimum contacts" with the forum state and further requires the district court's exercise of jurisdiction to be consistent with "traditional notions of fair play and substantial justice." *Id.*

### C. Minimum Contacts

Minimum contacts may give rise to general jurisdiction or specific jurisdiction, and either is sufficient to establish personal jurisdiction. *See id.*

#### 1. General Jurisdiction

General, or "all-purpose," jurisdiction arises when a defendant's contacts with the forum state are "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Compensation and Placement*, 326 U.S. 310, 318 (1945)). To exercise general jurisdiction over a non-resident defendant, the defendant's contacts with the forum state must be so continuous and systematic that the defendant is "essentially at home" in the forum state. *See id.* at 138. "[O]nly a limited set of affiliations with a forum will render a defendant amendable to all-purpose jurisdiction there." *Id.* at 137. The paradigm bases for general jurisdiction of a corporation are its state of incorporation and principal place of business. *See id.* Beyond that, general jurisdiction is difficult to establish and "require[s] extensive contacts between a defendant and a forum." *See Johnston*, 523 F.3d at 609 (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001)). "[V]ague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Id.* at 610. So too are allegations of a defendant's "[r]andom, fortuitous, or attenuated contacts" with the

forum state. *Id.* (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007)).

Plaintiffs' Amended Complaint is devoid of factual allegations that address the extent, duration, or frequency of GNM's Texas contacts, if any. *See generally* Dkt. 4. Thus, Plaintiffs have not made a prima facie showing that general jurisdiction exists.

## 2. *Specific Jurisdiction*

Whether Plaintiffs have made a *prima facie* showing that specific jurisdiction exists is more nuanced. The existence of specific jurisdiction depends on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)). To establish specific jurisdiction, the plaintiff must show that the defendant took "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." *Ford Motor Co. v. Mt. Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (alteration in original) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Id.* at 1025 (quoting *Keeton*, 465 U.S. at 774). The plaintiff must show the defendant "deliberately reached out beyond its home—by, for example, exploiting a market in the forum State or entering a contractual relationship centered there." *Id.* (cleaned up) (quoting *Walden*, 571 U.S. at 285). But even where the plaintiff makes this showing, specific jurisdiction only exists if his claims "arise out of or relate to the defendant's contacts" with the forum. *Id.* (citations omitted).

When "a defendant's website is the claimed basis for specific jurisdiction vis-à-vis an intentional tort," district courts must first look to the website's "interactivity." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 318 (5th Cir. 2021) (citing *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002)). If the website is "passive," meaning it just posts information that people

can see, "jurisdiction is unavailable, full stop." *Id.* On the other hand, if the website interacts with its visitors by sending *and* receiving information from them, district courts must determine whether the "virtual contacts that gave rise to the plaintiff's suit arise from the defendant's purposeful targeting of the forum state." *Id.* In so doing, district courts look to the test first applied by the United States Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). The key question, under *Calder*, is whether the forum state was the focal point of the alleged harmful conduct and of the harm suffered. *Id.*

In *Calder*, the Supreme Court considered whether a Florida newspaper and its staff could be sued for libel in California based on statements made in an article about a California actress. *See* 465 U.S. at 784–85. In that case, the newspaper's California readership was twice the level of the next highest state, the newspaper reporter made several telephone calls to California sources to obtain information for the article, and the article concerned the actress's California activities. *See id* at 784–86. The Supreme Court held California had specific jurisdiction over the newspaper because the article discussed "the California activities of a California resident," "was drawn from California sources," and the "brunt of the harm" was suffered by the plaintiff in California. *See id.* at 788–89. The Supreme Court concluded: "In sum, California is the focal point both of the story and of the harm suffered." *Id.* at 789. Looking back on its holding in *Calder*, the Supreme Court later explained:

> The crux of *Calder* was that the reputation-based "effects" of the alleged libel connected the defendants to California, not just to the plaintiff. The strength of that connection was largely a function of the nature of the libel tort. . . . [T]he reputational injury caused by the defendants' story would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens. . . . In this way, the "effects" caused by the defendants' article—*i.e.*, the injury to the plaintiff's reputation in the estimation of the California public—connected the defendants' conduct to *California*, not just to a plaintiff who lived there. That connection, combined with

the various facts that gave the article a California focus, sufficed to authorize the California court's exercise of jurisdiction.

*Walden*, 571 U.S. at 287–88 (internal citations omitted).

In *Revell v. Lidov*, the Fifth Circuit applied *Calder* to claims arising from an article posted by the defendant to an online message board, wherein the defendant accused the plaintiff, a Texas resident, of complicity in a terrorist attack. The Fifth Circuit instructed that, for Texas to have jurisdiction, the article needed to target Texas specifically and knowingly. *Revell*, 317 F.3d 467, 475 (5th Cir. 2002). The Fifth Circuit held it did not, as "the article never mentioned Texas, never discussed the plaintiff's activities there, and was not aimed at Texans more than at residents of other states." *Johnson*, 21 F.4th at 318; *see Revell*, 317 F.3d at 473, 476. Since *Revell*, the Fifth Circuit has consistently applied this standard, looking to whether the activities discussed in the online article, the source(s) of the article, and the article's intended or actual audience indicate the forum state was the focal point of the article. *See, e.g.*, *Johnson*, 21 F.4th at 319 (holding Texas was without jurisdiction when the article did not mention Texas, did not describe activities taken in Texas, and did not use Texas sources); *Herman v. Cataphora*, 730 F.3d 460, 466 (5th Cir. 2013) (holding the plaintiffs did not establish jurisdiction in Louisiana merely because the alleged harm was disproportionately suffered in Louisiana because the article did not mention Louisiana or indicate the activity discussed therein occurred in Louisiana and there was no indication the online article was published from Louisiana or directed at Louisiana residents); *Clemens v. McNamee*, 615 F.3d 374, 380 (5th Cir. 2010) (holding Texas was without jurisdiction because the alleged libelous statements, which were published online, did not concern the plaintiff's Texas activities, were not made in Texas, and were not directed to residents of Texas).

In this case, GNM's relevant conduct is its publication, through The Dodo, of the Article. The Court's inquiry, therefore, focuses on whether publication of the Article constituted

"purposeful availment" of the privilege of conducting activities in Texas, as required to confer specific jurisdiction in Texas. *See Herman*, 730 F.3d at 464; *Clemens*, 615 F.3d at 379; *see also Johnson*, 21 F.4th at 319 (focusing the court's inquiry on the specific part of the website from which the cause of action arose). Even assuming The Dodo is an interactive website, the Court finds publication of the Article is insufficient to confer specific jurisdiction. Although the Article was written about Mr. Salas's alleged activities in Texas—transporting chickens in Texas—and limited information in the Article was apparently gathered from a Texas source—the SPCA of Texas—the Court cannot find, based on the record, that the effects of the Article connected GNM to Texas sufficient to confer jurisdiction. *See Walden*, 571 U.S. at 286–88.

Indeed, the great majority of the article discusses cockfighting, generally, as opposed to in Texas, was largely sourced from outside of Texas, and does not appear to be directed to Texas, in particular. *See generally* Dkt. 32-2. Rather, the intent of the Article seems to raise awareness and draw conversation as to cockfighting, generally. *See generally id.* The Article does not identify Mr. Salas or any other plaintiff and does not state Mr. Salas's allegedly unlawful conduct occurred in Texas, was uncovered by Texas authorities, or was charged in Texas. *See Johnson*, 21 F.4th at 316, 319 (holding Texas lacked jurisdiction, in part, because the online article "said nothing about Texas" and did not "recount conduct that occurred in Texas"); *Revell*, 317 F.3d at 475 (same); *Herman*, 730 F.3d at 465 (holding Louisiana lacked jurisdiction, in part, because the online article did not mention Louisiana or refer to specific actions taken by the plaintiff in Louisiana). Indeed, but for the Article's brief statement that the chickens were taken by the SPCA of Texas to an undisclosed Texas location for safe keeping, the Article does not reference Texas or any other activity taken in Texas. *See generally* Dkt. 32-2. Further, there is no indication the Article was directed to Texas residents any more than residents of other states or that The Dodo is or was more

widely accessed in Texas than in any other state. *See Calder*, 465 U.S. at 785, 788–89; *Herman*, 730 F.3d at 466; *Clemens*, 615 F.3d at 380. And, while Plaintiffs may allege that any resulting harm was disproportionately suffered in Texas, disproportionate harm is not sufficient to confer jurisdiction absent a showing that the "focal point" of the Article was Texas. *See Herman*, 730 F.3d at 466; *see also Johnson*, 21 F.4th at 320 (an article's accessibility in the forum state is not sufficient to confer jurisdiction). Because Plaintiffs have not shown that Texas was the focal point of the Article, the Court finds Plaintiffs have failed to meet their burden to make a *prima facie* showing that specific jurisdiction exists.

### E. Traditional Notions of Fair Play and Substantial Justice

The Court finds its lacks personal jurisdiction because Plaintiff did not show GNM has minimum contacts with Texas, as required. Because minimum contacts are lacking, the Court does not reach whether the exercise of jurisdiction, in this case, would offend traditional notions of fair play and substantial justice. *See Clemens*, 615 F.3d at 378 (personal jurisdiction has two elements: (a) a defendant must have minimum contacts with the forum state; and (b) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice).

### F. Leave to Amend

Although the Court finds Plaintiffs have not pled sufficient facts to establish personal jurisdiction as to GNM, the Court finds it is possible Plaintiffs could plead facts to establish the Court's jurisdiction over GNM. In the interest of judicial economy, rather than dismissing GNM without prejudice for lack of personal jurisdiction, the Court recommends the District Judge permit Plaintiffs one opportunity to amend their complaint to establish the Court's jurisdiction over GNM. If Plaintiffs' amended complaint, if any, fails to establish the Court's jurisdiction over GNM or if Plaintiffs fail to file an amended complaint within the time prescribed by the District Judge, the

Court recommends GNM be permitted to, again, move for dismissal for lack of personal jurisdiction.

## IV.    INSUFFICIENT SERVICE

GNM, the SPCA of Texas, and Mr. Munoz move the Court to dismiss the claims against them for insufficient service of process. *See* Dkts. 32, 39.

### A. Standard for Service

Federal Rule of Civil Procedure 4 governs service of process. *See* FED. R. CIV. P. 4. Rule 4 provides that a corporation, partnership, or association—such as GNM and the SPCA of Texas—may be served as follows:

> Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:
>
> > (1) in a judicial district of the United States:
> > > (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
> > > (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant; or
> > (2) at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).

FED. R. CIV. P. 4(h). Relevant here, Rule 4(e)(1) provides that an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." *See* FED. R. CIV. P. 4(e)(1).

Because this Court sits in Texas, Rule 4 permits Plaintiffs to serve all Defendants as permitted under Texas law. Texas Rule of Civil Procedure 106 permits service of process as follows:

> (1) delivering to the defendant, in person, a true copy of the [summons] with the date of delivery endorsed thereon with a copy of the [complaint] attached thereto, or
>
> (2) mailing to the defendant by registered or certified mail, return receipt requested, a true copy of the [summons] with a copy of the [complaint] attached thereto.

TEX. R. CIV. P. 106(b). Service may be made by: (1) the court clerk; (2) a sheriff or constable or any other person authorized by law; (3) any person authorized by law or by written court order that is 18 years of age or older; or (4) any person certified under order of the Texas Supreme Court. *See* TEX. R. CIV. P. 103. Relevant in this case, neither Rule 4 nor the Texas Rules of Civil Procedure permit a party to serve process, even if service is effected by mail. *Avdeef v. Royal Bank of Scot., P.L.C.*, 616 F. App'x 665, 672 (5th Cir. 2015) (per curiam); *see* FED. R. CIV. P. 4(c)(2); TEX. R. CIV. P. 103. "There is no exception for pro se litigants." *Avdeef*, 616 F. App'x at 672.

If service of process is insufficient, Federal Rule of Civil Procedure 12(b)(5) authorizes the district court to dismiss the action as to each defendant who was insufficiently served. *See* FED. R. CIV. P. 12(b)(5). However, dismissal is not appropriate where there is a reasonable prospect the plaintiff will be able to effect proper service. *Craig v. Am. Honda Motor Co.*, No. 9:21-cv-43, 2021 WL 5501794, at *2 (E.D. Tex. Oct. 26, 2021) (citations omitted), *R. & R. adopted*, 2021 WL 5493362 (E.D. Tex. Nov. 22, 2021). In such cases, the district court has discretion to provide the plaintiff an opportunity to cure defects in service to avoid dismissal. *Id.*

### B. Service of GNM, the SPCA of Texas, and Mr. Munoz

GNM, the SPCA of Texas, and Mr. Munoz all contend they were insufficiently served because Plaintiffs, themselves, effected service using certified mail. *See* Dkt. 32 at 15–18; Dkt. 39 at 14–16. GNM contends Mr. Perry, himself, served GNM by serving its registered agent in Delaware through certified mail. *See* Dkt. 32 at 16; Dkt. 32-1 (front of envelope through which process was served containing return address). To support its contention, GNM provides a copy of the envelope used to serve GNM, which has Mr. Perry's address as the return address. *See* Dkts.

32-1, 33. The SPCA of Texas and Mr. Munoz likewise contend that Plaintiffs, themselves, effected service using certified mail. *See* Dkt. 39 at 14–16. To support their contention, the SPCA of Texas and Mr. Munoz cite a September 2021 filing, wherein Plaintiffs indicate they served each Defendant using certified mail and are awaiting the return of green cards. *See* Dkts. 5, 39 at 15–16.

If Plaintiffs, themselves, effected service on GNM, the SPCA of Texas, and Mr. Munoz, such service was insufficient under the law. *See Avdeef*, 616 F. App'x at 672. However, to the extent these Defendants were insufficiently served, the Court finds it appropriate to provide Plaintiffs an opportunity to cure any such defects to avoid dismissal, as there is a reasonable prospect Plaintiffs will be able to effect proper service. *See Craig*, 2021 WL 5501794, at *3. Accordingly, the Court recommends the District Judge order Plaintiffs to cure any defects in service as to GNM, the SPCA, and Mr. Munoz, if any, and to file returns of service as to such Defendants showing that sufficient service has been made. The Court further recommends that— if Plaintiffs fail to cure such defects in the time prescribed by the District Judge—GNM, the SPCA of Texas, and Mr. Munoz be permitted to, again, move to dismiss the claims against them based on insufficient service of process.

## V.    FAILURE TO STATE A CLAIM

The Motions seek to dismiss Plaintiffs' complaint for failure to state a legal claim upon which relief can be granted. *See* Dkts. 32, 36, 39, 52. The Motions, though separately filed, put forth the same general arguments that Plaintiffs' claims are time-barred and/or fail to assert sufficient facts to support Plaintiffs' entitlement to relief. *See* Dkts. 32, 36, 39, 52. Upon consideration, the Court finds Plaintiffs' complaint fails to state any claim upon which relief can be granted.

### A. Federal Pleading Standards

A complaint must give the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To state a claim for relief, a complaint must contain: (1) a short and plain statement of the grounds for the court's jurisdiction; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief. FED. R. CIV. P. 8(a). Importantly, the complaint must allege facts to support every element of each claim asserted by the plaintiff, which, taken as true, state plausible claims for relief. *See Kan v. OneWest Bank, FSB*, 823 F. Supp. 2d 464, 468 (W.D. Tex. 2011). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). If a "complaint . . . does not contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face,'" the complaint may be dismissed under Rule 12(b)(6). *See Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

When reviewing the sufficiency of a plaintiff's factual allegations, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)). The court must accept as true all well-pleaded facts contained in the complaint, "even if doubtful or suspect," and view them in the light most favorable to the plaintiff. *See Peña Arita v. United States*, 470 F. Supp. 3d 663, 680 (S.D. Tex. 2020); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). But the court need not

"accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A claim will survive an attack under Rule 12(b)(6) if, considering all well-pleaded facts, the complaint states a plausible claim for relief, rather than "the mere possibility of misconduct." *See id.* at 679.

### B.  Plaintiffs' Claims

The Court finds Plaintiffs' complaint fails to satisfy federal pleading standards. First and foremost, Plaintiffs' complaint does not contain a "short and plain statement" of each Plaintiff's entitlement to relief for each claim asserted. As pled, Plaintiffs' complaint asserts twenty-two causes of action on behalf of each Plaintiff and against each Defendant, even though Plaintiffs did not plead facts to support recovery by each Plaintiff and against each Defendant. For example, Plaintiffs allege in their complaint that only Mr. Salas was defamed by certain Defendants; the complaint is devoid of factual allegations showing that Mr. Perry, Mr. Vasquez, or the TGBA were likewise defamed. Nonetheless, each Plaintiff seeks to recover against each Defendant for the alleged defamation of Mr. Salas. For each Plaintiff to recover for the alleged defamation, Plaintiffs must plead facts that show each Plaintiff's entitlement to relief (i.e., that each Plaintiff was defamed). Likewise, Plaintiffs seek to recover against every Defendant for each cause of action, even though their factual allegations, as pled, cannot extend liability to each Defendant. For example, Plaintiffs seek to recover against all Defendants pursuant to Section 1983 for alleged violations of their constitutional rights; however, Plaintiffs have not alleged facts showing that each Defendant acted under color of law to deprive Plaintiffs of their rights, as required to state a claim under Section 1983. Merely stating that each Defendant acted under color of law to deprive Plaintiffs of their rights is not sufficient to extend liability under Section 1983. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."). To recover against each Defendant under Section 1983, Plaintiffs must plead facts that show each Defendant is liable. The same principle applies to each cause of action asserted by Plaintiffs.

Moreover, Plaintiffs have not pled sufficient facts to support the elements of each cause of action asserted. Indeed, as noted in the Motions, Plaintiffs have not pled facts to support each element of each cause of action asserted. As stated, Plaintiffs must plead factual allegations to support every element of every claim asserted. Conclusory statements that simply proclaim a defendant's liability or recite the elements of a cause of action are not sufficient to withstand dismissal under Rule 12(b)(6). *See Iqbal*, 556 U.S. at 678.

Finally, as noted in the Motions, Plaintiffs' allegations indicate some of Plaintiffs' claims may be time-barred, thus precluding Plaintiffs' entitlement to relief under the law. For example, Plaintiffs' Section 1983 claims are premised on Mr. Salas's June 20, 2017 traffic stop, his subsequent arrest, the alleged seizure of the transport van and sixty-three chickens, and related media coverage, all of which Plaintiffs allege occurred in or around June and July 2017. *See generally* Dkt. 4. But the limitations period for a Section 1983 claim brought in Texas is two years from the date "the plaintiff 'knows or has reason to know of the injury which is the basis of the action'" and "the causal connection between the defendant and the injury."[5] *Heilman v. City of Beaumont*, 638 F. App'x 363, 366 (5th Cir. 2016) (quoting *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989); citing *Piotrowski v. City of Hous.*, 237 F.3d 567, 576 (5th Cir. 2001)). Plaintiffs filed this action on June 18, 2021—nearly four years after Mr. Salas's arrest and the alleged seizure

---

[5] "Section 1983 does not prescribe a statute of limitations." *Heilman v. City of Beaumont*, 638 F. App'x 363, 366 (5th Cir. 2016). Instead, courts apply the "general statute of limitations governing personal injuries in the forum state." *Id.* (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 576 (5th Cir. 2001)). Texas has a two-year statute of limitations for personal injury claims and, therefore, courts in Texas apply a two-year statute of limitations to claims brought under Section 1983. *Id.* (citation omitted); *see* TEX. CIV. PRAC. & REM. CODE § 16.003(a).

of the chickens and approximately two years after the limitations period lapsed for any Section 1983 claim arising from such conduct, based on the allegations contained in Plaintiffs' complaint. *See* Dkt. 1. As pled, Plaintiffs' Section 1983 claims are subject to dismissal for being untimely filed. The same applies to many of Plaintiffs' other claims, such as Plaintiffs' Texas tort claims, which are also premised on Defendants' actions taken in 2017. Plaintiffs' complaint must include sufficient factual allegations to show that the statute of limitations for each cause of action asserted did not lapse before this case was filed.

Because this is the Court's first opportunity to assess the sufficiency of Plaintiffs' complaint, the Court finds it appropriate to allow Plaintiffs an opportunity to amend their complaint to comply with federal pleadings standards. *See Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009) (per curiam) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)) (stating, generally, that a *pro se* plaintiff should be allowed to amend his complaint before it is dismissed). Therefore, the Court recommends the District Judge grant Plaintiffs leave to amend their complaint and further recommends Plaintiffs be provided the following direction:

- Plaintiffs' amended complaint, if any, shall comply with the pleading requirements of the Federal Rules of Civil Procedure. Specifically, Plaintiffs shall specify the claims asserted against each Defendant and by each Plaintiff. Further, Plaintiffs shall allege sufficient facts to support every element of every claim asserted and to support each Plaintiff's entitlement to relief. To the extent Plaintiffs seek to recover for fraud, Plaintiffs shall comply with Rule 9, which requires Plaintiffs to state "with particularity the circumstances constituting fraud or mistake"—that is, the "who, what, when, where, and how of the alleged fraud." *United States ex rel. Steury v. Cardinal Health Inc.*, 735 F.3d 202, 204 (5th Cir. 2013) (per curiam)

(citation omitted); *see* FED. R. CIV. P. 9 (imposing a heightened pleading requirement for fraud claims). And Plaintiffs shall comply with Rule 10, which requires claims to be stated in numbered paragraphs, "each limited as far as practicable to a single set of circumstances." *See* FED. R. CIV. P. 10.

- Plaintiffs' amended complaint, if any, shall comply with the pleading requirements of the Eastern District of Texas. Specifically, Plaintiffs shall comply with Local Rule CV-3, which provides, "Absent leave of court, complaints and the initial responsive pleadings thereto filed in civil rights proceedings shall not exceed thirty pages, excluding attachments." *See* LOCAL R. CV-3(d).

- Finally, Plaintiffs shall be advised that any failure to timely file an amended complaint may result in the dismissal of Plaintiffs' claims for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

The Court further recommends that each of the moving Defendants be permitted to refile Rule 12(b)(6) motions as to Plaintiffs' amended complaint, if any is filed, or to reassert their Motions if no amended complaint is filed.

## VI.    RECOMMENDATION

For the foregoing reasons, the Court recommends Plaintiffs' claims asserted under Title 18, except for Plaintiffs' RICO claims, and Plaintiffs' claims asserted under 28 U.S.C. § 1746 and 31 U.S.C. § 3729 be **DISMISSED** for lack of subject-matter jurisdiction.

The Court further recommends GNM's Motion (Dkt. 32) be **DENIED WITHOUT PREJUDICE**, as the Court finds it proper to allow Plaintiffs an opportunity to amend their complaint to establish the Court's personal jurisdiction over GNM, if any. However, the Court recommends the District Judge permit GNM to reassert its motion if Plaintiffs fail to timely amend

their complaint or to refile its motion if Plaintiffs' amended complaint, if any, fails to establish the Court's personal jurisdiction over GNM.

The Court further recommends that NBC's Motion, Univision's Motion, and the SPCA's Motion be **GRANTED** as to Plaintiffs' claims asserted under Title 18, except for Plaintiffs' RICO claims, and Plaintiffs' claims asserted under 28 U.S.C. § 1746 and 31 U.S.C. § 3729. The Court further recommends NBC's Motion, Univision's Motion, and the SPCA's Motion be **DENIED WITHOUT PREJUDICE** as to Plaintiffs' remaining claims and that Plaintiffs be granted leave to cure the pleading deficiencies identified herein with respect to such claims. The Court further recommends Plaintiffs be ordered to comply with the pleading standards articulated by the Federal Rules of Civil Procedure—specifically Rules 8, 9, and 10, as set forth above—and by the Local Rules of the Eastern District of Texas. The Court further recommends that Plaintiffs be advised that any failure to timely file an amended complaint may result in the dismissal of Plaintiffs' claims under Federal Rule of Civil Procedure 41(b).

If Plaintiffs timely amend their complaint, the Court further recommends: (a) Plaintiffs be provided an additional fourteen (14) days from the date the amended complaint is filed to cure any defects in service as to GNM, the SPCA of Texas, and Mr. Munoz and to file returns of service as to each Defendant; (b) GNM, the SPCA of Texas, and Mr. Munoz be permitted to refile Rule 12(b)(5) motions as to Plaintiffs' amended complaint within twenty-one (21) days after the amended complaint is filed; and (c) all of the moving Defendants discussed herein be permitted to refile Rule 12(b)(6) motions as to Plaintiffs' amended complaint within twenty-one (21) days after the amended complaint is filed. If Plaintiffs do not file an amended complaint, the Court recommends all of the moving Defendants be permitted to reassert their Motions for the Court's consideration.

Within fourteen (14) days after service of the Magistrate Judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 9th day of August, 2022.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE